UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESTATE of THOMAS E. BENTLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-1412-B |
| | § | |
| MARRIOTT INTERNATIONAL INC. | § | |
| d/b/a The Ritz-Carlton Hotel Company LLC | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Transfer Venue to the United States District Court for the Middle District of Florida (Doc. 7). For the reasons stated below, the Court **DENIES** Defendant's Motion.

### I.

### BACKGROUND[1]

This is a suit for breach of contract and fraud, properly removed to this Court under 28 U.S.C § 1441, and properly before it now under 28 U.S.C. § 1332(a)(1). Plaintiff, Estate of Thomas E. Bentley, alleges as follows: Mr. Bentley, now deceased, was a prominent Dallas businessman who frequently stayed at the Ritz Carlton Hotel in Amelia Island, Florida. Doc. 14, Pl.'s Resp. to Def.'s Mot. to Transfer (Pl.'s Resp.) 2. There, he bought large amounts of Ritz-related merchandise, which

---

[1] The background facts are drawn from Plaintiff's Original Petition, Doc. 1-1, Ex. A; Plaintiff's Response to Defendant's Motion to Transfer Venue, Doc. 14; and Plaintiff's Appendix in Support, Doc. 15. Defendant concedes the facts pleaded in Plaintiff's version of the Petition only for purposes of its motion to transfer. Doc. 8, Def.'s Br. in Support of Mot. to Transfer (Def.'s Br.) 2 n.1.

he then gave away to charities, friends, family, and business associates. *Id.* Ritz often overcharged him for these purchases, sometimes failing to deliver all of the goods he ordered. *Id.*

Defendant, Marriott International Inc. (Marriott), which manages the Amelia Island Ritz, denies all of Plaintiff's statements, or else maintains "it is without knowledge or information sufficient to form a belief as to the truth or falsity [of them]." Doc. 6, Def.'s Answer to Pl.'s Compl. ¶¶ 10–44.

Plaintiff filed its initial Petition in Dallas County's 298th District Court on April 1, 2015. Doc. 1-1, Ex. A, Pl.'s Original Pet.; Doc. 1-2, Ex. B, E-SERVE Citation. Defendant filed a notice of removal on May 5, 2015, Doc. 1, Notice of Removal, and, less than a month later, moved to transfer the case to the United States District Court for the Middle District of Florida. Doc. 7, Def.'s Mot. to Transfer 1. Plaintiff opposed the motion and responded on July 7, 2015. Doc. 14., Pl.'s Resp. The Court now considers whether to transfer the case.

## II.

## LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district or division if (1) a plaintiff could have brought that action there originally, and (2) transfer would be for "the convenience of parties and witnesses, and in the interest of justice." 28 U.S.C. § 1404(a). The movant bears the burden of proving both elements. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (en banc); *Calloway v. Triad Fin. Corp.*, No. 07-CV-1292, 2007 WL 4548085, at *2 (N.D. Tex. Dec. 27, 2007).

A plaintiff could have brought an action in a district or division initially if, at the time she filed the action, (1) either she or defendant resided in that district or division; and (2) both resided within the state. 28 U.S.C. § 1391(b)(1).

To demonstrate that transfer would be for "the convenience of parties and witnesses, and in the interest of justice" under 28 U.S.C. § 1404(a), a movant must show good cause. *In re Volkswagen*, 545 F.3d at 315 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). To determine whether a movant has shown good cause, courts examine a number of private and public factors. *In re Volkswagen*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *In re Volkswagen*, 545 F.3d at 315 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen*, 545 F.3d at 315. The balance of these factors must clearly weigh in favor of transferring to the new venue. *Id.* "[If] the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed." *Thomas v. City of Fort Worth*, No. 07-CV-1689, 2008 WL 4225556, at * 2 (N.D. Tex. Sept. 15, 2008). Instead, for a transfer, the movant must establish that the transferee venue is "clearly more convenient." *In re Volkswagen*, 545 F.3d at 315.

## III.

## ANALYSIS

Defendant moves this Court to transfer Plaintiff's action to the United States District Court for the Middle District of Florida under 28 U.S.C. §1404(a). Doc. 7, Def.'s Mot. to Transfer 1. Before determining whether that would be appropriate, the Court considers a preliminary question: whether Plaintiff could have originally brought its claim in the Middle District of Florida under Sec. 1404(a). It could have.

In a diversity case, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, Plaintiff concedes that "some of the wrongful conduct took place at the [Ritz] hotel [in Florida]," but insists that Ritz "has not established that a substantial amount of the wrongdoing took place in Florida." Doc. 14, Pl.'s Resp. 5. According to Plaintiff, venue would thus have been initially improper there under Sec. 1391(b)(2). *Id.* The Court disagrees. Emails between Bentley and Ritz's representatives indicate the two negotiated some of the allegedly fraudulent transactions online, meaning in both Texas and Florida. Doc. 15, Pl.'s App., 31-42, 44-53. At least one of these transactions involved a diamond quoted at $195,000.00. *Id.* at 49. This is substantial. Thus, movant has met its burden and demonstrated that venue would have been initially appropriate in the Middle District of Florida. *In re Volkswagen*, 545 F.3d at 312.

The Court moves on to consider the public and private factors set forth in *Volkswagen* in order to determine whether Defendant has established good cause for the Court to transfer this action.[2]

---

[2] When the Court considers a motion to transfer venue, it may examine affidavits submitted by either party.

A.   *Private Factors*

   1.   Relative Ease of Access to Sources of Proof

The first private interest factor the Court examines is whether it would be easier for both parties to access sources of proof in this case if it were transferred to the Middle District of Florida. The answer to this question is unclear, so the factor is neutral.

Generally, "[r]egardless [of] whether technological advances and email service would make litigating [a] case in [one district or] [d]ivision *possible* . . . there is still a *greater* ease of access to sources of proof in [the district or division where the underlying events in question took place]." *Davis v. City of Fort Worth*, No. 14-CV-1698, 2014 WL 2915881, at *3 (N.D. Tex. June 25, 2014).

Here, Plaintiff asserts two claims—breach of contract and fraud. Doc. 1-1, Ex. A, Original Pet. ¶¶ 45–55. The events underlying the breach claim consist of Defendant allegedly (i) overcharging Mr. Bentley for goods, (ii) increasing prices beyond what the two agreed upon, (iii) failing to deliver goods, (iv) and/or not providing certain goods to Mr. Bentley's intended beneficiaries. *Id.* at ¶ 48. Defendant has put forth little to no evidence indicating that the purported overcharges and price increases took place in Florida. In fact, it is *Plaintiff* who has provided a number of emails showing that, at the very least, some of the transactions and negotiations were carried out digitally, meaning in both Florida and Texas. *See* Doc. 15, Pl.'s App. 31–42 (email from Ritz to Bentley's assistant regarding quotes on clothing); *id.* at 44–53 (on jewelry, with pictures). With respect to the latter two underlying events—Defendant's alleged failure to deliver goods and/or provide goods to Bentley's intended beneficiaries—it is again unclear where these events occurred.

---

*See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973); *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 823 n.1 (N.D. Tex. 2013).

Though some of the goods in question were initially in Ritz's Florida store, *see id.* at 44–53, beyond Defendant's assertion that the intended beneficiary charities were also in Florida, Doc. 8, Def.'s Br. 8, the Court cannot tell where the goods were ultimately delivered. And because Plaintiff's second claim, fraud, is based upon the same underlying events, it is equally unclear where these events took place. Doc. 1-1, Ex. A, Original Pet. ¶ 51.³

Thus, the Court cannot be sure where many events underlying this case took place, but because it is evident that at least some of them took place in both Florida and Texas, the Court holds the ease of access factor neutral under *Volkswagen.*

2.   <u>Availability of Compulsory Process to Secure Attendance of Witnesses</u>

The second question the Court considers is whether compulsory process to secure the attendance of potential (unwilling) witnesses would be better available in the Middle District of Florida.

According to Defendant, potential (unwilling) witnesses in this case consist of former Ritz employees who allegedly participated in the events underlying Plaintiff's breach and fraud claims, including Morris Brin. Doc. 8, Def.'s Br. 6. Defendant insists these individuals reside in the Middle District of Florida, and are subject only to *that* court's subpoena power. *Id.* (citing Fed. R. Civ. P. 45(c)(3)(A)(ii), though Fed. R. Civ. P. 45(c)(1)(A) is the relevant provision). According to Plaintiff, this allegation, alone, is not enough. Doc. 14, Pl.'s Resp. 6–7. Instead, it argues that Defendant, as "[t]he party seeking transfer[,] must specify . . . clearly the key witnesses to be called and their

---

³ Plaintiff also argues that no paper record for Marriott's reservations data exists, so it would be no easier to access this information in the Middle District of Florida. Doc. 14, Pl.'s Resp. 5–6. Indeed, Plaintiff has adequately demonstrated Marriott keeps no paper records of reservations. Doc. 15, Pl.'s App. 4–6. Instead, all reservation data appears to be digitally stored at a Maryland data center. *Id.* at 4. Still, there is no indication that this digitization includes store purchases.

location and must make a general statement of what their testimony will cover." *Id.* at 7 (quoting *Magana v. Toyota Motor Corp*, No. 10-CV-1451, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) (internal citations omitted)). But *Magana*'s requirement applies only to the *third* public interest factor: cost of attendance of *willing* witnesses. *Magana,* 2010 WL 5108850, at *2. It is not strictly necessary for a movant to provide detail on potential unwilling witnesses under the second factor. Nevertheless, it is true that "[t]he Court gives more weight to specifically identified witnesses, and affords less weight to vague assertions that witnesses are likely to be found in a particular forum." *U.S. Ethernet Innovations, LLC v. Samsung Electronics Co., Ltd.*, No. 12-CV-398, 2013 WL 1363613, at *3 (E.D. Tex. Apr. 2, 2013). And here, only Mr. Brin is specifically identified, while the remaining employees go nameless. Doc. 8, Def.'s Br. 6. For that reason, Defendant's argument, that compulsory process would be better available in Florida to secure the attendance of unwilling witnesses, is not convincing.

Plaintiff fares no better. True or not, Plaintiff's suggestion that Texas's subpoena power would better compel the attendance of *its* witnesses, relative to Florida's, misses the mark. Doc. 14, Pl.'s Resp. 7. Though *Volkswagen*'s second private interest factor is technically styled as "availability of compulsory process to secure attendance of witnesses,'" this Court interprets that language to refer only to *unwilling* witnesses. *See Smith's Consumer Products, Inc. v. Fortune Products, Inc.*, No. 14-CV-00627, 2015 WL 1037419, at *3 (N.D. Tex. Mar. 9, 2015) ("the Court [now] considers the availability of compulsory process or subpoena power to secure the attendance of *unwilling* witnesses") (emphasis added) (citing *Gulf Oil Corp.*, 330 U.S. at 508-09)). Mr. Bentley's two long-time assistants and two daughters, each of whom Plaintiff already insists *will* testify, are evidently

willing, rather than unwilling, witnesses. Doc. 14, Pl.'s Resp. 7. Thus whether they are technically beyond Florida's subpoena power is of no moment to this issue.

On balance, then, the second public interest factor is neutral.

### 3. Cost of Attendance for Willing Witnesses

The third public interest factor this Court considers is the cost of attendance for *willing* witnesses. *This* is where *Magana*'s more detailed pleading requirement applies, which Defendant fails to meet, rendering this factor neutral under *Volkswagen.*

Under *Magana*, "[t]he party seeking transfer[,] must specify . . . clearly the key witnesses to be called and their location and must make a general statement of what their testimony will cover." *Magana,* 2010 WL 5108850, at *2 (internal citations omitted) (discussing the cost of attendance for willing witnesses). Here, Defendant identifies as willing witnesses: (1) Ritz's current employees, including the unnamed General Manager of the Hotel, and (2) Ritz's former employees. Doc. 8, Def.'s Br. 7. First, and most obviously, Defendant gives neither the name, location, or general testimony of any current Ritz employee, save for Mr. Brin, who is named only, nor does it provide any other information that would allow the Court to identify these individuals. *See id.* at 7–8. And while Defendant is not required to identify *every* current employee key witness by name, address, and general testimony, here, as in *Magana,* save for naming Mr. Brin, it "has failed to satisfy its burden by not providing the name, address, or proposed testimony *of a single witness,* and thus this important factor does not weigh in its favor." *Magana,* 2010 WL 5108850, at *2 (emphasis added).

Second, Defendant, by including Ritz's *former* employees in this category, effectively mischaracterizes them as *willing* witnesses. Nothing indicates they are. And even if they were, Defendant, pages earlier in its brief, characterized them as *unwilling* witnesses, discussing them under the second private interest factor—availability of compulsory process to secure the attendance of (*unwilling*) witnesses. Doc. 8, Def.'s Br. 6. They cannot be both.

Further, *Plaintiff's* willing witnesses, (1) Mr. Bentley's long-time assistant, Marie Savant; (2) Mr. Bentley's long-time employee, Robert Freytag; (3) Mr. Bentley's daughter, Laura Kellogg, and (4) Mr. Bentley's other daughter, Terry Bentley Hill, all purportedly reside in Texas. Doc. 14, Pl.'s Resp. 7. Though Plaintiff has also failed to substantiate this claim under *Magana*, it is the movant who bears the burden under all factors. *In re Volkswagen*, 545 F.3d at 314 n.10. Thus, as Defendant has put forth no credible evidence under this factor to warrant transfer, the Court finds this factor, too, is neutral.

### 4. All Other Practical Problems

Next, the Court considers the public interest catch-all factor: all other practical problems that would make a trial easy, expeditious, and inexpensive. Here, transferring this case to the Middle District of Florida would yield no such problems. Nor would it alleviate any. Thus, this factor is neutral.

Defendant argues that, because the Court only has before it this motion and because neither party has conducted any discovery, transfer would "not cause any duplication of effort by the Court or the parties and would not impair any of the parties' rights." Doc. 8, Def.'s Br. 8 (citing *Sabre*

*Techs., L.P. v. TSM Exhibits, Inc.*, No. 09-CV-0392, 2010 U.S. Dist. LEXIS 104881, at *13 (N.D. Tex. Sept. 29, 2010)). Indeed, it would not. Further, the discovery deadline in this case is January 3, 2016. Doc. 13, Scheduling Order. Trial is set for May 2, 2016. *Id.* Transfer would not disturb either of these deadlines. Thus, there are no other practical problems that would weigh for or against transfer. This factor is neutral.

B.   Public Factors

    1.   <u>Administrative Difficulties</u>

Moving on, the first public factor the Court considers is administrative difficulties, namely court congestion. This factor weighs against transfer.

Defendant asserts that, because the Northern District of Texas has more pending cases than the Middle District of Florida—12,295 to 9,040—the latter is less congested, and, so, trying this case there would yield fewer administrative difficulties. Doc. 8, Def.'s Br. 9. Plaintiff counters by contending that the aggregate caseload statistic "is not particularly useful or meaningful." Doc. 14, Pl.'s Resp. 8. The Court agrees. The more appropriate metric is instead weighted filings per judge,[4] a figure that accounts for the fact that different types of civil and criminal actions take different amounts of time to resolve.[5] Looking at that figure, it appears that, for the twelve-month period ending March 31, 2015, the Middle District of Florida had 691 weighted filings per judgeship to the Northern District of Texas' 589. United States Courts, Table N/A—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2015) [hereinafter U.S. Courts

---

[4] Plaintiff suggests weighted caseload per judge. Doc. 14, Pl's Resp. 8.

[5] United States District Courts—Judicial Business 2012, *available at* http://www.uscourts.gov/statistics-reports/us-district-courts-judicial-business-2012.

2015 Statistics], *available at* http://www.uscourts.gov/file/18187/download. Thus it is the Middle District of Florida, not the Northern District of Texas, that is more congested.[6]

But Plaintiff's second contention—that the Court should examine "the more critical issue of which venue moves cases to trial more expeditiously"—has little merit. Doc 14., Pl.'s Resp. 8. "[T]his factor [court congestion] [is not] a 'race between the courts,'" as "[e]ach case is unique, and whether or not [a] case would progress more rapidly [in one district] or in [another] district is largely a matter of speculation." *Eight One Two, LLC v. Purdue Pharma L.P.*, No. 13-CV-2981, 2014 WL 7740476, at *4 (N.D. Tex. May 16, 2014). So because both courts have "an average disposition time of less than three years," which is "the standard[] of the Administrative Office of the United States Courts," neither court can be characterized as "congested" under 1404(a)'s venue transfer analysis, regardless of relative processing time. *Id.* (citations omitted); U.S. Courts 2015 Statistics (demonstrating both districts fall well under the three year mark).

Plaintiff's third and final argument, that the Middle District of Florida "is one of the busiest federal districts in the nation," carries little weight. Doc. 14, Pl.'s Resp. 9; Doc. 15, Pl.'s App. 7–13. What matters instead is how busy the Middle District of Florida is *relative* to the Northern District of Texas. As mentioned above, it has approximately one hundred more weighted filings per judge than its Texas counterpart, making it more congested. Therefore, this factor weighs against transfer.

---

[6] If one averages weighted filings per judge for the past five years, the Middle District of Florida still has more cases than the Northern District of Texas—663.33 to 552. U.S. Courts 2015 Statistics.

2. Local Interest

The second public interest factor the Court considers is whether the Middle District of Florida has a local interest in adjudicating this matter. It does, but so does Texas. Accordingly, this factor is neutral.

It is well settled that "[the localized interest] factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Davis*, 2014 WL 2915881, at *6 (citations omitted). As discussed in Sec. III(A)(1), *supra,* the events underlying this lawsuit occurred in *both* Texas and Florida. Both have a local interest in adjudicating the matter.

3. Familiarity with Governing Law

The next factor the Court considers is whether the proposed forum is familiar with the law that will govern the case. The first step, then, is to determine whose law governs. To answer, the Court turns to the choice of law rules for the state in which the Court considering the transfer motion sits, as this is a diversity case. *Gruber v. Deuschle*, 261 F. Supp. 2d 682, 688-89 (N.D. Tex. 2003)(citations omitted). Here, that is Texas. Thus, we use the "most significant relationship test" to determine whether Texas or Florida law applies. *Id.* (citations omitted). We consider the following factors: "(1) the place of the contract; (2) the place where the contract was negotiated; (3) the location of the subject matter of the contract; and (4) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Id.* at 689 (internal citations omitted).

As discussed above, the place where the contracts were formed and negotiated is not clear, and Defendant has done little to remedy that. *See* Sec. III(A)(1). Instead, it simply asserts, without support, that they were formed and negotiated in Florida. Doc. 8, Def.'s Br. 10. Plaintiff, on the other hand, submits evidence that, at the very least, calls this into question. It appears that Bentley and

Ritz negotiated at least some of their transactions over the Internet, meaning in both Florida and Texas. Doc. 15, Pl.'s App. 44–53. But as to where the subject matter of this contract was located, again, Defendant submits no proof that the goods were within Florida, and Plaintiff's appendix suggests that at least some of the jewelry in question was within Florida at the time of the negotiations. *Id.* Moreover, common sense counsels that those goods allegedly purchased in Ritz's gift shop were, of course, in Florida, too. With respect to the last sub-factor, the Court finds that Defendant has provided no documentation proving that it is domiciled or incorporated in Florida, though, of course, it does business there. As to Mr. Bentley's domicile and residence, based on the letterhead Plaintiff submitted, it seems evident he was based in Texas. *Id.* at 43.

In short, the Court cannot definitively resolve this issue without more information. Thus, this factor is neutral.

4. <u>Avoidance of Unnecessary Conflict of Laws</u>

Both parties included briefing on avoidance of unnecessary conflict of laws with public factor three, "familiarity of the forum with the law that will govern the case." *In re Volkswagen*, 545 F.3d at 315. Because the Texas and Florida standards on breach and fraud are at least somewhat different, their laws conflict. But because, as mentioned above, the Court has insufficient information to resolve the issue of which state's law applies, this factor is neutral.

## IV.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that Defendant has failed to prove that transfer to the Middle District of Florida would be "clearly more convenient." *In re Volkswagen*, 545 F.3d at 315. Accordingly, the Court **DENIES** Defendant's Motion to Transfer Venue.

SO ORDERED.

DATED October 2, 2015

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE